[No. 15084-1-II.    Division Two.    April 26, 1994.]

THE STATE OF WASHINGTON, *Respondent*, v. TED EDWARD OREIRO, *Appellant*.

---

*Dana Michael Ryan,* for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney,* and *James B. Roche, Deputy,* for respondent.

HOUGHTON, J. — Ted Edward Oreiro appeals the Superior Court's denial of his motion to dismiss certain felony counts which were originally filed in the juvenile court but later

dismissed by that court and refiled in superior court. We affirm.

## FACTS

In late 1990, 16-year-old Ted Edward Oreiro was charged in Pierce County Juvenile Court with six felony counts. In early 1991, the Juvenile Court entered an order declining jurisdiction on the three most recent charges and dismissing the other three counts without prejudice.

On February 14, 1991, Oreiro was charged in Pierce County Superior Court with first degree burglary, second degree theft and second degree escape. The charges were based upon allegations that Oreiro: unlawfully entered a residence in November 1990; unlawfully obtained handguns and other property located in the residence; and escaped from the juvenile detention center in December 1990.

On March 29, 1991, the information was amended to add one count of first degree possession of stolen property, one count of first degree theft, and a second count of second degree escape. The added charges were based upon allegations that Oreiro: knowingly possessed a stolen automobile in October 1990; unlawfully obtained a television set and other property in October 1990; and escaped from the juvenile detention center in November 1990.

A Second Amended Information was filed on June 5, 1991, charging Oreiro with a total of five counts, including: first degree burglary (count 1); second degree theft (count 2); second degree escape (counts 3 and 4); and first degree possession of stolen property (count 5).

In May of 1991, Oreiro moved to dismiss counts 4, 5 and 6 of the First Amended Information, referred to as counts 4 and 5 in the Second Amended Information, contending that the Superior Court lacked jurisdiction over those charges. Count 5 of the First Amended Information was dropped. Oreiro argued that the challenged charges were, in effect, the same charges that had been dismissed by the Juvenile Court, and that the State, by moving to dismiss those charges in juvenile court and then refiling them in superior

court, was attempting to circumvent the juvenile justice system. The trial judge denied Oreiro's motion.

Oreiro was convicted on counts 1 and 2 by a jury, on count 3 by plea, and on counts 4 and 5 by stipulated facts. Oreiro appeals and asserts that the trial court erred in denying his motion to dismiss.

## ANALYSIS

Oreiro contends the Superior Court erred in denying his motion to dismiss certain counts of the amended informations because those counts fell within the jurisdiction of the juvenile court, not the superior court. He also contends that filing in adult court charges which had previously been dismissed in juvenile court violates his right to due process.

The Juvenile Justice Act of 1977, RCW 13.40, vests the juvenile court with jurisdiction over any individual who is under the chronological age of 18 years and who has not been previously transferred to adult court. *See State v. Sharon,* 100 Wn.2d 230, 231, 668 P.2d 584 (1983); *see also* former RCW 13.40.020(10). Prior to a juvenile court hearing on the merits of a case, the prosecutor, the juvenile, or the court may file a motion requesting the court to transfer the juvenile for adult criminal prosecution. *See* RCW 13.40.110(1). If such a motion is made, the matter is set for a hearing on the question of declining juvenile court jurisdiction. *See* RCW 13.40.110(1). In cases involving felony charges, the declination hearing must be held within 14 days after the information is filed, unless the time is extended by the court for good cause. JuCR 8.1(b). Once a juvenile offender has been transferred to adult court, that offender no longer meets the definition of a "juvenile" over which the juvenile court has jurisdiction. *See Sharon,* 100 Wn.2d at 231.

The law is settled as to future offenses. When the juvenile court waives jurisdiction, the youth comes under the permanent jurisdiction of the adult criminal system and is treated as an adult as to all *future offenses. See Sharon,* 100 Wn.2d at 231; *State v. Mitchell,* 32 Wn. App. 499, 500, 648 P.2d 456 (1982).

The question here is as to past offenses (using the date of declination as a point of reference). Here, the challenged counts were charged in juvenile court before the declination. The counts were based upon conduct alleged to have occurred before the declination, and they were not included in the State's declination motion. Thus, at issue is whether the order of dismissal following the declination order divested the juvenile court of jurisdiction over those charges.

Jurisdiction over an offense committed by a juvenile is determined at the time proceedings are initiated against the alleged offender. *See, e.g., State v. Calderon*, 102 Wn.2d 348, 351-52, 684 P.2d 1293 (1984). Here, the Juvenile Court initially had jurisdiction over the challenged charges because those charges were originally filed in juvenile court. However, after the declination on the more recent charges, the Juvenile Court divested itself of jurisdiction over the challenged charges by dismissing them, notwithstanding the fact that the dismissal was without prejudice. The filing of these charges in adult court thus constitutes a new filing. Accordingly, we are satisfied that absent a showing of misconduct by the prosecutor, the postdeclination dismissal of charges in juvenile court divests the juvenile court of jurisdiction over the dismissed charges. We reserve for another case the question of what constitutes such prosecutorial misconduct; however, we are satisfied there is no showing of prosecutorial misconduct in this case.

Finally, Oreiro contends that allowing the State to file in adult court charges which had previously been dismissed in juvenile court violates his due process rights. He analogizes the present situation to one where the State's delay in filing charges against a juvenile offender results in a loss of juvenile court jurisdiction.

Admittedly, preaccusatorial delay in bringing charges may violate due process. *See United States v. Lovasco*, 431 U.S. 783, 52 L. Ed. 2d 752, 97 S. Ct. 2044, *reh'g denied*, 434 U.S. 881 (1977); *Calderon*, 102 Wn.2d at 352. Where preaccusatorial delay by the State in filing charges results in the loss of juvenile court jurisdiction, a 3-step test is employed

to determine whether that delay violated the accused's due process rights. *State v. Dixon*, 114 Wn.2d 857, 860, 792 P.2d 137 (1990). The test provides:

> (1) that the defendant show prejudice resulting from the delay; (2) that there are reasons for the delay which the court must consider; and (3) where the State can justify the delay, that the court engage in balancing the State's interest against the prejudice to the accused.

*Dixon*, 114 Wn.2d at 860. While there is no constitutional right to be tried in juvenile court, *see, e.g., Dixon*, 114 Wn.2d at 860, Washington's Supreme Court has held that offenders carry their burden of showing the minimal prerequisite of prejudice when a delay in filing charges deprives the juvenile court of jurisdiction. *See Dixon*, 114 Wn.2d at 861 (citing *State v. Alvin*, 109 Wn.2d 602, 604, 746 P.2d 807 (1987)); *see also Calderon*, 102 Wn.2d at 353. In balancing the interest of the State against the prejudice to the accused, the standard to be applied is "whether the action complained of . . . violates those . . . fundamental conceptions of justice which lie at the base of our civil and political institutions". *Calderon*, 102 Wn.2d at 353 (quoting *Lovasco*, 431 U.S. at 790).

■ Even assuming this case is analogous to the preaccusatorial delay cases, and that Oreiro has satisfied his burden of showing prejudice, the Juvenile Court's dismissal of the challenged charges and the subsequent refiling of those charges in adult court does not, based upon the present record, violate fundamental conceptions of justice. The record indicates that the challenged charges were not disposed of in juvenile court prior to the declination hearing because Oreiro asked that the resolution of those charges be continued pending the outcome of the declination hearing on the three most recent offenses. Accordingly, it would be fundamentally unfair to allow Oreiro to assert prosecutorial delay as a basis for escaping liability when the delay was caused, at least in part, by his own actions. Moreover, while Oreiro contends that the State sought dismissal of the juvenile court charges for an improper purpose (*i.e.*, to circumvent the juvenile justice

874

system), the State's motives for seeking dismissal of the charges in juvenile court and refiling them in superior court are not clear from the record. We hold under the facts of this case that allowing the State to file charges against Oreiro which had been previously dismissed in juvenile court did not violate his right to due process.

Affirmed.

MORGAN, C.J., and ALEXANDER, J., concur.