IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31485-5-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ALFREDO BRICE INOCENCIO, | ) | PUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Alfredo Inocencio appeals the results of a resentencing, arguing that the trial court erroneously included points in his offender score for two convictions as a juvenile in adult court that he claims are invalid. Citing *State v. Saenz*, 175 Wn.2d 167, 283 P.3d 1094 (2012), he argues that the State cannot demonstrate that his waiver of a decline hearing resulting in those convictions as an adult was knowing and voluntary. He also relies on *Saenz* to argue that the court's order transferring jurisdiction of those charges to adult court contained inadequate findings.

*Saenz* involved the distinguishable context of a court imposing a sentence on a persistent offender of total confinement for life without the possibility of release. When requesting such a sentence, the State must prove a defendant's prior status as an

"offender," a statutorily defined term that implicates proof of the prior sentencing court's jurisdiction over a juvenile. Where only an offender score is at issue, as in this case, the State has the different burden of proving the defendant's criminal history by a preponderance of the evidence—a burden that can be met without proving a prior sentencing court's jurisdiction.

*Saenz* does not apply. Because the allegedly invalid convictions have not previously been determined to have been unconstitutionally obtained and are not constitutionally invalid on their face, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Alfredo Inocencio was convicted in 2009 of two counts of first degree assault. This court affirmed his judgment and sentence on appeal. *See State v. Inocencio*, Commissioner's Ruling, No. 28691-6-III (Wash. Ct. App., May 25, 2011). In response to a timely petition for review, however, we remanded the matter to the superior court for resentencing after the State agreed that errors had been made in calculating the offender scores for the two convictions. *See In re: Alfredo Jose Inocencio*, Agreed Order Transferring Personal Restraint Petition to Superior Court for Resentencing and Dismissing Petition, No. 30908-8-III (Wash. Ct. App., December 4, 2012).

Before the resentencing hearing, Mr. Inocencio filed a motion to strike two prior convictions from his offender score for the reason that "the defendant was 16 years of age at the time of the convictions and had not been properly declined by the Juvenile Court

2

prior to the entry of the conviction in Adult Court." Clerk's Papers (CP) at 33. This requested adjustment to his offender score was distinct from, and in addition to, the error that resulted in the order requiring resentencing. According to Mr. Inocencio, striking of two convictions entered in 2005, when he was a juvenile, was required by the Washington Supreme Court's decision in *Saenz*.

*The Juvenile Convictions*

Mr. Inocencio's two convictions at issue were the result of a 2005 plea agreement. He had initially been charged with first degree robbery, unlawful possession of a firearm, and possession of a stolen firearm; the first degree robbery charge resulted in automatic declination from the juvenile division to adult criminal court. RCW 13.04.030(1)(e)(v). The State and Mr. Inocencio reached an agreement under which the State would file an amended information in adult court reducing the first two charges to first and second degree theft and dropping the third charge. In exchange, Mr. Inocencio agreed to enter a plea of guilty to the two theft charges. It was a condition of the State's agreement that the convictions be entered in adult criminal court. Since the reduced charges fell within the jurisdiction of the juvenile court, Mr. Inocencio agreed to waive a decline hearing and submit to the jurisdiction of the adult court.

At the hearing on Mr. Inocencio's guilty plea, the lawyers explained their agreement and the sentencing judge engaged in some discussion with Mr. Inocencio about the fact that by submitting to the jurisdiction of the adult court, any further crimes

3

he committed as a juvenile would automatically fall within the jurisdiction of the adult court. Mr. Inocencio indicated that he understood.

The trial court that accepted the plea and waiver of a decline hearing entered findings of fact and conclusions of law that stated, in relevant part:

III.

Inocencio knowingly, intelligently and voluntarily waives his right to a declination hearing in the Juvenile Division under RCW 13.40.110(1). Inocencio understands that entry of this order will subject him to Adult Division jurisdiction for any and all subsequent criminal offenses, because he will no longer meet the definition of "juvenile" under RCW Title 13 as interpreted by State v. Oreiro, 73 Wn. App. 868 [871 P.2d 666] (1994).

IV.

The State and Inocencio request the Juvenile Division to decline jurisdiction and the Adult Division to retain jurisdiction. This agreed jurisdictional status is a material component of the plea agreement into which Inocencio has entered with the State.

V.

In light of the facts, reports and opinions submitted, the best interests of Inocencio and the community would be served by declination of Juvenile Division jurisdiction over the amended charges of First Degree Theft and Second Degree Theft (and any and all subsequent charges) pursuant to RCW 13.40.110(2) and the criteria set forth in Kent v. United States, 383 U.S. 541 [86 S. Ct. 1045] (1966) and State v. Holland, 98 Wn.2d 507 [656 P.2d 1056] (1983).

CP at 42-43. On the basis of the findings, the court ordered that the juvenile division of the superior court declined jurisdiction over Mr. Inocencio and that the adult division of the court retained jurisdiction.

4

*2013 Resentencing Hearing*

At the 2013 resentencing hearing, a new sentencing judge heard argument of Mr. Inocencio's motion to strike the two 2005 theft convictions from his offender score. Mr. Inocencio argued that in order for a conviction entered when he was less than 18 years old to count toward his offender score, *Saenz* required the State to demonstrate that the case had properly been under adult criminal court jurisdiction. Because he had waived juvenile court jurisdiction, he argued that *Saenz* required the State to demonstrate an express waiver, intelligently made, after having been fully informed of the rights being waived. *See Saenz*, 175 Wn.2d at 176. He also argued that before transferring the case to adult court, the juvenile court must have entered a finding that transfer to adult court was in the best interest of Mr. Inocencio or the public. *See id.* at 180. He argued that in the case of his 2005 theft convictions, there was no showing of an informed intelligent waiver and that the court's "best interest" finding was conclusory.

The sentencing court refused to strike the 2005 theft convictions and included them in arriving at a corrected offender score. In announcing its sentencing decision, the court observed that in the case of Mr. Inocencio's 2005 sentencing (unlike in *Saenz*) the court had entered a written finding that the best interest of Mr. Inocencio and the community would be served by declination of juvenile court jurisdiction.

Mr. Inocencio appeals the court's refusal to strike the 2005 convictions in calculating his offender score.

5

ANALYSIS

RCW 9.94A.525 provides that a defendant's offender score "is the sum of points accrued under this section rounded down to the nearest whole number." First and second degree theft are class B and C felonies, respectively. RCW 9A.56.030(2); RCW 9A.56.040(2). Unless they have washed out, class B and C felonies count toward the offender score under RCW 9.94A.525(2)(g), which "applies to both adult and juvenile prior convictions."

Nonetheless, in *Saenz* and in *State v. Knippling*, 166 Wn.2d 93, 206 P.3d 332 (2009)—both involving sentences imposed under the Persistent Offender Accountability Act (POAA) of the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW, also known as the "three strikes law"—our Supreme Court held that the State fails to meet its burden of proving that a defendant "has . . . been convicted as an offender" of a "strike" as required by RCW 9.94A.030(37) when it offers evidence of a conviction at a time when the defendant was less than 18 years old without demonstrating that he or she was properly before the adult criminal court. At issue is whether the reasoning of the two decisions extends to the facts of this case.

*The Supreme Court Decisions in* Knippling *and* Saenz

In *Knippling*, the State asked in 2005 that Tucero Knippling be sentenced to life imprisonment without parole as a persistent offender, relying in part on his conviction of a most serious offense in 1999. The 1999 judgment and sentence indicated on its face

6

that Mr. Knippling had been 16 years of age at the time of the conviction. As in Mr. Inocencio's case, the record indicated that Mr. Knippling had originally been charged in 1999 with first degree robbery over which the adult criminal court had automatic jurisdiction, but that the parties had reached a plea agreement under which the charge was reduced to second degree robbery, a crime within the exclusive jurisdiction of the juvenile court. Once the information was amended, "the superior court no longer had jurisdiction because of Knippling's status as a juvenile," and "a declination hearing was required in order to transfer the case back to superior court." *Id.* at 101.

Nothing in the record before the court asked to sentence Mr. Knippling as a persistent offender in 2005 indicated that the juvenile court declined jurisdiction in 1999. The supreme court granted review on the issue of whether Mr. Knippling's 1999 conviction, "evidenced solely by a judgment and sentence that indicated that Knippling was a juvenile and that did not contain an explanation of why the superior court had jurisdiction over Knippling, counts as a strike under the POAA." *Id.* at 98.

Critical to the Supreme Court's decision in *Knippling* was the requirement of the POAA that a persistent offender be convicted three separate times as an "offender," which is defined at RCW 9.94A.030(34) as "[a] person who has committed a felony established by state law and is eighteen years of age or older," or

> is less than eighteen years of age but whose case is under superior court jurisdiction under RCW 13.04.030 or has been transferred by the appropriate juvenile court to a criminal court pursuant to RCW 13.40.110.

7

166 Wn.2d at 99. By failing to prove that the juvenile court had declined its otherwise exclusive jurisdiction over Mr. Knippling, the court held that the State failed to meet its burden of showing that Mr. Knippling had been convicted as an "offender" in 1999. *Id.* at 102.

Three years later, in *Saenz*, the Supreme Court similarly held that the State failed to prove that Jorge Saenz's conviction of felony assault while a juvenile operated as a strike—but in *Saenz*, the record revealed the reason for the transfer of jurisdiction to superior court. In offering evidence of Mr. Saenz's 2001 guilty plea to assault at age 15 as one of the required strikes, the State included evidence that Mr. Saenz agreed to the transfer of his case to adult court in exchange for the dropping of some of the charges against him. Despite his explicit waiver of a decline hearing in 2001, Mr. Saenz argued when being sentenced for the third strike that he had not knowingly and intelligently waived the decline hearing or juvenile court jurisdiction in 2001, and that the juvenile court did not enter findings that declining juvenile jurisdiction was in his best interest or that of the public. *Saenz*, 175 Wn.2d at 171.

The Supreme Court's decision in *Saenz* discussed the fundamental difference between adult courts, which are wholly punitive, and juvenile courts, which continue to be somewhat rehabilitative, and concluded that moving a case from juvenile court to adult court "is 'a critically important action determining vitally important statutory rights

8

of the juvenile.'" *Id.* at 174 (quoting *Kent v. United States*, 383 U.S. 541, 556, 86 S. Ct. 1045, 16 L. Ed. 2d 84 (1966)). Citing and expanding on *Knippling*, the court then held that compliance with the statutory requirements for declining jurisdiction were important in Mr. Saenz's case because "a juvenile's conviction in adult court can be used as a strike under the POAA only if the State shows that [the] transfer . . . was proper." *Id.* at 175.

Pointing out that RCW 13.40.140(9) requires that a waiver of any right in juvenile court must be an "express waiver intelligently made by the juvenile after the juvenile has been fully informed of the right being waived," the *Saenz* court concluded that despite Mr. Saenz's lawyer's representation to the court that she had at least two conversations with her client about the waiver,

> [t]he record does not indicate what was discussed in those extrajudicial conversations, whether Saenz was "intelligently" waiving his rights, or whether he had been "fully informed of the right being waived" as required by RCW 13.40.140(9).

175 Wn.2d at 177. As in *Knippling*, the court in *Saenz* concluded that because juvenile court jurisdiction had not been effectively waived or declined, the juvenile convictions could not be counted as strikes under the POAA.

Mr. Saenz also challenged the failure of the sentencing court to enter a written finding required by former RCW 13.40.110(2) (1997), *recodified as* RCW 13.40.110(3), that "declination would be in the best interest of the juvenile or the public." The statute

9

requires that the finding "shall be supported by relevant facts and opinions produced at the hearing." Former RCW 13.40.110(3) (1997), *recodified as* RCW 13.40.110(4). The *Saenz* court agreed that these requirements are mandatory and that a judge must independently and conscientiously make this "best interest" determination even where the parties waive the decline hearing and stipulate to transfer to adult court. *Saenz*, 175 Wn.2d at 180. "If the judge is unable to enter findings without a hearing, the judge should order a hearing." *Id.*

Mr. Inocencio argues that under *Knippling* and *Saenz* the State failed to prove that the exclusive jurisdiction of the juvenile court over the theft charges against him in 2005 was effectively waived or declined before jurisdiction was transferred to adult court, which convicted him based on his plea. He also argues that the juvenile court's findings were conclusory and insufficient under *Saenz*. For both reasons, he argues, the juvenile convictions cannot count toward his offender score.

*Persistent Offender Sentencing Versus Other SRA Sentencing*

*Knippling* and *Saenz* both deal with the State's burden of proving that a conviction of a crime that it offers as a prior strike under the POAA was properly before the adult court if (1) the conviction was for a crime over which the juvenile court would ordinarily have exclusive jurisdiction, and (2) the offender was then less than 18 years old at the time of the conviction. Such proof is necessary before the sentencing court may rely on a

10

third strike to impose the onerous persistent offender sentence of total confinement for life without the possibility of release.

This case presents the much more common and almost always less consequential scenario of using a juvenile conviction entered by an adult court as a point in calculating an offender score.

The linchpin to *Knippling*'s conclusion that the State must show that a conviction as a juvenile offered as a strike under the POAA was properly under adult court jurisdiction is the definition of "offender" provided by RCW 9.94A.030. The POAA was the result of the 1993 passage of Initiative 593, which posed the question whether criminals convicted of "most serious offenses" on three occasions should be sentenced to life in prison without parole. *See State v. Thorne*, 129 Wn.2d 736, 746, 921 P.2d 514 (1996). The initiative defined the terms "persistent offender" and "offender." LAWS OF 1994, ch. 1, § 3; *codified as* former RCW 9.94A.030(23), (25) (1994). "Persistent offender" was defined to mean an "offender" who had been convicted in Washington of a felony considered a most serious offense and who had previously been convicted as an "offender" at least twice before of felonies that would be considered most serious offenses under Washington law. As earlier noted, "offender" was defined to include both adult felons and

> [a] person who has committed a felony established by state law . . . and is less than eighteen years of age but whose case is under superior court

11

jurisdiction under RCW 13.04.030 or has been transferred by the
appropriate juvenile court to a criminal court pursuant to RCW 13.40.110.

166 Wn.2d at 99.

While it is true that the term "offender" is used throughout the SRA, and that the

SRA contemplates that persons convicted will all fall within the definition of "offender,"

that does not mean that every time a defendant challenges his prior status as an offender it

will have to be proved by the State. Mr. Inocencio has not drawn our attention to any

provision requiring that the State prove at the time of sentencing that a defendant was an

"offender" at the time of each conviction that counts toward his or her offender score.

*Saenz* does not apply. Instead, the SRA imposes a different and well-settled requirement

that, at the time of sentencing, the State prove only a defendant's "criminal history."

"The offender score measures a defendant's criminal history." *State v. Ford*, 137

Wn.2d 472, 479, 973 P.2d 452 (1999). "'Criminal history' means the list of a

defendant's prior convictions and juvenile adjudications, whether in this state, in federal

court, or elsewhere." RCW 9.94A.030(11). RCW 9.94A.500(1), dealing with the

conduct of sentencing hearings, states in part:

> A criminal history summary relating to the defendant from the
> prosecuting authority or from a state, federal, or foreign governmental
> agency shall be prima facie evidence of the existence and validity of the
> convictions listed therein. If the court is satisfied by a preponderance of the
> evidence that the defendant has a criminal history, the court shall specify
> the convictions it has found to exist.

12

The burden of establishing criminal history by a preponderance of the evidence, for purposes of determining the offender score at sentencing, lies with the prosecution. *In re Goodwin*, 146 Wn.2d 861, 868 n.3, 50 P.3d 618 (2002). "The best evidence of a prior conviction is a certified copy of the judgment." *State v. Priest*, 147 Wn. App. 662, 668, 196 P.3d 763 (2008) (citing *Ford*, 137 Wn.2d at 480).

A separate line of cases establishes that for offender score purposes, it is the criminal defendant who bears the burden of demonstrating the invalidity of a prior conviction, and the cases impose strict limits on the defendant's ability to raise such a challenge in a sentencing hearing. The leading case is *State v. Ammons*, 105 Wn.2d 175, 188, 713 P.2d 719 (1986), in which our Supreme Court held that a defendant "has no right to contest a prior conviction at a subsequent sentencing. To allow an attack at that point would unduly and unjustifiably overburden the sentencing court." *Id.* Even where a defendant's challenge is of constitutional magnitude,

> The defendant has available, more appropriate arenas for the determination of the constitutional validity of a prior conviction. The defendant must use established avenues of challenge provided for post-conviction relief.

*Id.*

*Ammons* recognized only two instances in which a defendant can raise the invalidity of a prior conviction offered at sentencing as counting toward his offender score: "a prior conviction which has been previously determined to have been unconstitutionally obtained or which is constitutionally invalid on its face." *Id.* at 187-

13

88. "Constitutionally invalid on its face means a conviction which without further elaboration evidences infirmities of a constitutional magnitude." *Id.* at 188.

The different treatment of prior convictions as a juvenile in persistent offender sentencing and offender score calculation was recognized in *State v. Ollens*, 89 Wn. App. 437, 443-44, 949 P.2d 407 (1998). The court recognized in *Ollens* that because the POAA's definition of "offender" refers only to *Washington's* statute permitting transfers of juvenile court proceedings to adult criminal courts, an offender who was convicted of a most serious offense in *another state's* adult court before age 18 could not be an "offender," with the result that his or her conviction as a juvenile could not count as a strike. Notably, however, *Ollens* observed that such an offense "would be counted in [the defendant's] offender score for sentencing purposes, even though not usable to establish persistent offender status." *Id.* at 444; *cf. State v. Jones*, 110 Wn.2d 74, 78-80, 750 P.2d 620 (1988) (a conviction may be included in the offender score even if it was successfully challenged in a prior habitual criminal proceeding; collateral estoppel does not apply because the State has the burden of proving the validity of prior convictions in habitual criminal proceedings but not SRA sentencing proceedings).

At Mr. Inocencio's resentencing, he did not demonstrate that his two 2005 theft convictions had been previously determined to have been unconstitutionally obtained nor

14

No. 31485-5-III
*State v. Inocencio*

did he demonstrate that they were constitutionally invalid on their face. They were

therefore properly included in his offender score.

Affirmed.

Siddoway, C.J.

WE CONCUR:

Brown, J.

Fearing, .J.

15